UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JASON JORGENSON,<br><br>    Movant,<br><br> vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | 4:19-CV-04133-KES<br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the *pro se* motion of Jason Jorgenson to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255.  See Docket Nos. 1 & 12.[1]  Respondent the United States of America ("government") now moves to dismiss Mr. Jorgenson's motion without holding an evidentiary hearing as to claim 1, but conceding that an evidentiary hearing may be necessary as to claim 2.  See Docket Nos. 29 & 31.  Mr. Jorgenson opposes the motion.  See Docket No. 32.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

---

[1] References to documents filed in Mr. Jorgenson's civil § 2255 matter are referenced simply by "Docket #."  References to documents filed in Mr. Jorgenson's underlying criminal matter, United States v. Jorgenson, 4:17-cr-40043, are referenced by "CR Docket #."

## FACTS

**A.    Pre-Plea Proceedings**

Mr. Jorgenson, aka Jessica Smith, was indicted on May 9, 2017, in federal court.  He was charged in count one with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A) between March 12, 2017, and April 7, 2017.  See CR Docket No. 1. Between December 14, 2016, and January 12, 2017, he was alleged in count two to have received and distributed child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1).  Id.  He was also charged in count three with receiving and distributing child pornography between December 2, 2016, and February 4, 2017.  Id.  Finally, he was charged in count four with receiving and distributing child pornography between November 26, 2016, and December 30, 2016.  Id.

At the time the federal indictment was issued, Mr. Jorgenson was in state custody on state charges of possession and use of a controlled substance and failing to register as a sex offender.  See CR Docket No. 9, p. 6.  A writ of habeas corpus ad prosequendum was issued bringing Mr. Jorgenson to federal custody on June 19, 2017, for his initial appearance on the federal charges. See CR Docket No. 10.  At that time, the undersigned magistrate judge appointed Jason Tupman from the Federal Public Defender's Office to represent Mr. Jorgenson.  See CR Docket No. 11.  Mr. Jorgenson was ordered detained at this point.  See CR Docket No. 12.

Mr. Tupman filed motions for continuances of the deadlines in the scheduling order on November 7, 2017; January 9, 2018; and March 20, 2018. See CR Docket Nos. 25, 28, and 31.  The district court denied the last of these motions, despite the fact Mr. Jorgenson consented to (in fact enthusiastically requested) the continuance.  See CR Docket No. 32.

**B.    Plea Agreement**

On March 23, 2018, a plea agreement and statement of factual basis signed by Mr. Jorgenson, Mr. Tupman, and the government were filed with the court.  See CR Docket Nos. 33 & 34.  The plea agreement provided Mr. Jorgenson would plead guilty to count two of the indictment charging him with receipt and distribution of child pornography.  See CR Docket No. 33 at p. 2, ¶3.  The agreement stated that the penalty for count two was "no less than 15 years in prison" and up to a maximum of "40 years in prison."  Id.  In return for Mr. Jorgenson's plea of guilty to count two, the government agreed to dismiss the other three charges.  Id. at p.3.

The government agreed Mr. Jorgenson would be entitled to a two-level decrease in his offense level under the United States Sentencing Guidelines ("USSG") for accepting responsibility by reason of his plea of guilty, and another one point reduction if his offense level was 16 or greater.  Id. at p. 4, ¶¶5 & 6.  The plea agreement left both the government and Mr. Jorgenson free to argue and present evidence at sentencing, but the government agreed to recommend a sentence within the applicable USSG range.  Id. at p. 5, ¶7.  The plea agreement advised Mr. Jorgenson that any recommendation as to

3

sentencing made by either himself or the government was not binding on the court. Id. The agreement advised Mr. Jorgenson he would not be allowed to withdraw his guilty plea if the court rejected either party's sentencing recommendation. Id.

In support of the plea agreement, Mr. Jorgenson agreed that the factual basis statement was a true and accurate statement of his actions or omissions upon which the court could rely in determining whether to accept the plea. Id. at p. 9, ¶13. The factual basis statement was incorporated by reference into the plea agreement. Id.

The plea agreement provided that Mr. Jorgenson waived all defenses and his right to appeal any non-jurisdictional issues. Id. at p. 10, ¶17. Excluded from this waiver was Mr. Jorgenson's right to appeal any decision by the court to depart upward from the USSG range. Id. Also excluded was Mr. Jorgenson's right to appeal the substantive reasonableness of any sentence which resulted from an upward departure or an upward variance. Id.

The factual basis statement, also signed by Mr. Jorgenson, Mr. Tupman, and the government, stated that between December 14, 2016, and January 12, 2017, Mr. Jorgenson in Sioux Falls, South Dakota, used his LG cell phone to access the internet using a Flicker account in order to receive and distribute digital files containing images of child pornography. See CR Docket No. 34. Mr. Jorgenson agreed these images constituted child pornography because the images depicted minors engaging in sexually explicit conduct. Id.

4

Mr. Jorgenson further stated the child pornography had been transported over the internet, in or affecting interstate or foreign commerce.

## C.    Change of Plea Hearing

On April 2, 2018, a change of plea hearing was held.  See CR Docket No. 59.  At the beginning of the hearing, Mr. Jorgenson was placed under oath. Id. at p. 2.  All subsequent testimony from him described below was under oath, under penalty of perjury.

The court asked Mr. Jorgenson whether he understood he was under oath to tell the truth and if he testified falsely, the government could prosecute him for perjury.  Id.  Mr. Jorgenson said he understood.  Id.

Mr. Jorgenson testified he had a General Equivalency Degree, he had not been treated recently for mental illness or addiction to narcotic drugs, and he was not currently under the influence of any drug, medication, or alcoholic beverage.  Id. at p. 3.  Mr. Jorgenson affirmed he had received the indictment, read it, and discussed it with his lawyer.  Id.  Mr. Jorgenson testified he was fully satisfied with Mr. Tupman and the advice and representation he had received from Mr. Tupman.  Id.

Mr. Jorgenson testified he read and discussed the plea agreement and factual basis statement with his lawyer before he signed them.  Id.  He also stated those documents represented the entirety of all the agreements or understandings he had with the government.  Id. at pp. 3-4.  Mr. Jorgenson testified he understood those documents.  Id. at p. 4.  He denied that anyone had made any promises or assurances that were not in writing in the plea

5

agreement.  Id.  He denied that anyone threatened him in any way to persuade him to accept the plea agreement.  Id.  The court specifically advised Mr. Jorgenson it could reject the sentencing recommendations made in the plea agreement and sentence Mr. Jorgenson more severely than he anticipated without allowing him to withdraw his plea of guilty.  Id.  Mr. Jorgenson stated under penalty of perjury that he understood this.  Id.  Mr. Jorgenson again told the court that no one had "attempted in any way to force him" or "threatened him to get him to plead guilty."  Id. at pp. 4-5.  Mr. Jorgenson averred he was pleading guilty of his own free will because he was guilty.  Id. at p. 5.

The court then advised Mr. Jorgenson of the penalty for count two.  Id. at pp. 5-6.  The court told Mr. Jorgenson "[t]here's a mandatory minimum period of imprisonment of not less than 15 years and a maximum period of not more than 40 years in prison."  Id. at p. 6.  The court asked whether Mr. Jorgenson understood these were the mandatory minimum and the possible maximum penalties he faced if he entered a guilty plea.  Id.  Mr. Jorgenson stated he understood.  Id.

The court then advised Mr. Jorgenson that it would be calculating his advisory sentence under the USSG before sentencing him.  Id. at pp. 6-7. Mr. Jorgenson told the court that Mr. Tupman had gone over the USSG with him.  Id. at p. 7.  The court told Mr. Jorgenson that it could not calculate his USSG range that day because the court would have to wait for the Presentence Report ("PSR") to be completed and for all objections to the PSR to be resolved. Id.  The court specifically advised Mr. Jorgenson that the USSG range

6

applicable at sentencing might be different than the estimate Mr. Tupman had given him. Id. Mr. Jorgenson testified he understood that. Id. The court also informed Mr. Jorgenson that it would decide whether there was any reason to give Mr. Jorgenson a sentence below or above the USSG range. Id. The court told Mr. Jorgenson his actual sentence might be above or below the USSG range. Id. Mr. Jorgenson said he understood this. Id.

The court advised Mr. Jorgenson that, under the terms of the plea agreement, he was waiving or giving up his right to appeal everything in the case except if the court gave him a sentence above the USSG range or if he wanted to appeal the court's jurisdiction. Id. at pp. 7-8. The court asked Mr. Jorgenson if he understood the government did have the right to appeal even though he did not. Id. at p. 8. Mr. Jorgenson said he understood. Id.

The court informed Mr. Jorgenson that, notwithstanding he had signed a plea agreement, he could still plead not guilty and have a jury trial. Id. The court told Mr. Jorgenson that if he did so, the court would instruct the jury that Mr. Jorgenson was presumed innocent and the burden would be on the government to prove his guilt beyond a reasonable doubt. Id. The court informed Mr. Jorgenson he would have the right to assistance of counsel at trial and at every other stage of the proceeding. Id. The court told Mr. Jorgenson he would have the right to see and hear all the witnesses and to have them cross-examined on his behalf. Id.

The court explained to Mr. Jorgenson that he had the right not to testify at a trial unless he voluntarily gave up that right. Id. at pp. 8-9. The court

informed Mr. Jorgenson that if he decided not to testify or not to put on any evidence, the court would instruct the jury they could not use those facts against Mr. Jorgenson.  Id. at p. 9.  The court informed Mr. Jorgenson he had the right to subpoena witnesses for trial.  Id.  The court told Mr. Jorgenson that the burden would stay on the government at all times to prove his guilt beyond a reasonable doubt.  Id.  The court then informed Mr. Jorgenson if he entered a guilty plea that day, there would not be a trial and he would have given up all the other rights the court had just described to him.  Id.  Mr. Jorgenson testified under oath that he understood all of this.  Id.

The court then explained to Mr. Jorgenson the elements of the crime the government would have to prove if Mr. Jorgenson elected to continue with his not guilty plea and go to trial.  Id.  Mr. Jorgenson testified he understood this is what the government would have to prove at trial.  Id. at pp. 9-10.

Mr. Jorgenson told the court he read the factual basis statement before signing it.  Id. at p. 10.  He further testified that everything contained in the statement was the truth.  Id.  The court then asked whether Mr. Jorgenson knew that some of the images in the files contained images of a minor engaging in sexually explicit conduct.  Id.  Mr. Jorgenson testified he did understand.  Id.  At this point, Mr. Jorgenson entered a plea of guilty to count two of the indictment charging him with distribution and receipt of child pornography.  Id.

The court then found Mr. Jorgenson was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and

the consequences of his plea, and that Mr. Jorgenson's plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.  Id. at pp. 10-11.  The court then accepted Mr. Jorgenson's plea and adjudged him guilty of the offense.  Id. at p. 11.

The court then told Mr. Jorgenson the schedule for when the PSR would have to be completed and when sentencing would be.  Id.  The court informed Mr. Jorgenson if there were things that were incorrect or wrong in the PSR, he could either ask for a correction or file objections.  Id.  The court told Mr. Jorgenson he could have family and friends testify at his sentencing hearing if they wished, or write letters of support if they would rather do that.  Id.  The court also informed Mr. Jorgenson he would have the opportunity to tell the court anything he wanted to tell about himself at the sentencing hearing.  Id.

**D.    PSR**

A PSR was prepared which set forth all the child pornography Mr. Jorgenson had been involved with as revealed by the investigation.  See CR Docket No. 45 at pp. 1-11.  The PSR calculated Mr. Jorgenson's USSG advisory sentencing range as follows:

| | |
|---|---|
| Base Offense Level | 22 |
| Increase because the material depicted a minor under 12 years of age | +2 |
| Increase because defendant knowingly engaged in distribution other than distribution described in USSG § 2G2.2(b)(3)(A) – (E) | +2 |

9

| | |
|---|---|
| Increase because material portrayed sadistic or masochistic conduct or other depictions of violence; or portrayed sexual abuse or exploitation of an infant or toddler | +4 |
| Increase because defendant engaged in a pattern of activity involving sexual abuse or exploitation of a minor | +5 |
| Increase because conduct involved the use of a computer or interactive computer service for the possession, receipt, transmission, or distribution of the material with intent to view the material | +2 |
| Increase because the conduct involved at least 600 images | +5 |
| Subtotal | 42 |
| Reduction for Acceptance of Responsibility | -3 |
| **TOTAL OFFENSE LEVEL** | **39** |

Id. at pp. 11-12.

The PSR detailed Mr. Jorgenson's criminal history which included violations of stalking orders and a criminal solicitation conviction for contacting a woman via text and asking to have sex with her and her 5- and 9-year-old daughters or, in the alternative, asking the woman to send him nude pictures of her daughters that Mr. Jorgenson could use for masturbation. Id. at p. 17. Mr. Jorgenson's criminal history points totaled 13, which placed him in criminal history category VI.

The PSR concluded that a total offense level of 39 and a criminal history category of VI yielded a USSG range of 360 months' imprisonment to 480 months. Id. at 22. The statutory minimum period of imprisonment was 15

years (180 months).  Id.  The statutory maximum period of imprisonment was

40 years (480 months).  Id.  The PSR indicated the author felt there was no

information warranting a departure from the USSG advisory sentencing range.

Id. at p. 24.

**E.    Sentencing Hearing**

In advance of the sentencing hearing, Mr. Jorgenson's mother and aunt

submitted written letters of support for the court to consider.  See CR Docket

No. 51.  Both asked for leniency on Mr. Jorgenson's behalf.  Id.  The aunt

detailed the deleterious upbringing Mr. Jorgenson had suffered.  Id.

Mr. Jorgenson also wrote an allocution statement for the court's

consideration at sentencing.  See CR Docket No. 52.  Mr. Jorgenson told the

court about the abuse he had suffered as a child, including molestation and

rape.  Id.  He asked the court for mercy.  Id.  He also asked for a single cell in

prison because he had PTSD from a prison rape he had been the victim of at

the age of 19.  Id.  Mr. Jorgenson did not tell the court about any programming

or counseling he was receiving.  Id.

Mr. Jorgenson was sentenced on August 2, 2018.  See CR Docket No. 61.

Neither the government nor Mr. Tupman on behalf of Mr. Jorgenson filed any

objections to the PSR.  Id. at p. 2.  The court recited the above USSG

calculation from the PSR and counsel for both parties agreed that was

accurate.  Id. at pp. 2-3.  The court indicated it had received and read the

letters from Mr. Jorgenson's mother and aunt.  Id. at p. 3.  In addition,

Mr. Tupman presented the court with a photo of Mr. Jorgenson when he was

11

young and some representative examples of Mr. Jorgenson's art work as well as Mr. Jorgenson's allocution statement.  Id.  The court then reviewed these submissions.  Id.

Mr. Tupman spoke more than eloquently and feelingly about Mr. Jorgenson.  Id. at pp. 4-8.  He explained the unspeakable abuse and neglect Mr. Jorgenson suffered as a child and how that abuse continued in a juvenile detention setting.  Id.  Despite all of this, Mr. Tupman pointed out Mr. Jorgenson had accepted responsibility for his actions from the beginning. Id.  He never sought to blame anyone else, he never protested his innocence. Id.  He reached out to others and expressed remorse and shame.  Id. Mr. Tupman, an extremely experienced federal criminal defense lawyer, spoke about how high Mr. Jorgenson's USSG range was, maybe the highest counsel had appeared on.  Id.  Mr. Tupman asked the court to take into consideration Mr. Jorgenson's childhood circumstances and render a sentence of 300 months, below the USSG range.  Id.

The court then invited Mr. Jorgenson to speak.  Id. at p. 8. Mr. Jorgenson apologized for his conduct which brought him before the court. Id.  He stated he never intended to cause anyone any harm.  Id.  He expressed his remorse and assured the court he would never engage in such behavior again.  Id. at pp. 8-9.  The court noted some of Mr. Jorgenson's family and friends were in the courtroom and invited them to step forward if they wanted to say anything.  Id. at p. 9.  No one accepted the invitation.  Id.

The government pointed out that Mr. Jorgenson's behavior posed a threat to society and that, by virtue of his prior convictions, he had already received the benefit of treatment, counseling and medications. Id. at pp. 9-11. The government argued that despite these interventions, almost immediately upon his release from prison, Mr. Jorgenson began engaging in the same type of behavior. Id.

The court addressed Mr. Jorgenson and stated it understood the difficult childhood he had. Id. at p. 12. The court acknowledged how talented Mr. Jorgenson was as an artist. Id. However, the court also stated it found Mr. Jorgenson's criminal history at only age 33 to be alarming. Id. The court noted he had been in prison and paroled and had his parole revoked twice. Id. The crime Mr. Jorgenson was being sentenced for happened within three months of his release from prison. Id. at p. 13. The court expressed that two of the purposes of sentencing were to punish him for his conduct, but also to protect the public. Id. Therefore, the court felt a sentence within the USSG range was appropriate, but in view of Mr. Jorgenson's childhood, the court imposed a sentence at the very bottom of that USSG range. Id. at p. 14. The court sentenced Mr. Jorgenson to 360 months' imprisonment (30 years). Id.

The court advised Mr. Jorgenson he had waived his right to appeal in his plea agreement, but nonetheless advised Mr. Jorgenson if he wanted to appeal, he needed to file a notice of appeal within 14 days from the date of sentencing. Id. at p. 17.

**F.    Mr. Jorgenson's § 2255 Motion**

Mr. Jorgenson filed the instant § 2255 motion on August 2, 2019, within the one-year statute of limitations allowed for such motions.  He argues counsel was constitutionally ineffective at the trial level and on appeal.  See Docket No. 12.  The substance of those allegations are discussed in further detail below.

**DISCUSSION**

**A.    Scope of a § 2255 Motion**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presented logistical issues because the record in the underlying criminal case were often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was

14

imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255.

Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

15

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis applies to petitioner's claim of constitutionally-deficient counsel.

**B.    Standard Applicable to Rule 12(b)(6) Motions**

The government's motion to dismiss Mr. Jorgenson's § 2255 motion is based on Federal Rule of Civil Procedure 12, specifically parts (b)(6) and (h)(3) of Rule 12.  See Docket No. 29.  The Federal Rules of Civil Procedure are applicable to § 2255 habeas actions so long as the procedural rules do not conflict with the habeas statutes or the Rules Governing Section 2255 Cases in the United States District Courts ("Governing Rules").  See Governing Rule 12. Federal Rule of Civil Procedure 12(b)(6) is not inconsistent with the Governing Rules.  Compare Governing Rules 4 & 5 (allowing respondent to respond to petitioner's habeas petition with a motion), with FED. R. CIV. P. 12(b)(6) (same); see also Ebert v. Clarke, 320 F. Supp. 2d 902, 909-10 (D. Neb. 2004) (holding that FED. R. CIV. P. 12(b)(6) applies in habeas proceedings).

The government invokes Rule 12(h)(3), which allows dismissal for lack of subject matter jurisdiction, but never supports its invocation with any evidence

16

or argument that this court lacks jurisdiction.  Indeed, Mr. Jorgenson seeks to attack the constitutionality of his conviction and this is the district in which he was sentenced.  If *this* court does not have subject matter jurisdiction over Mr. Jorgenson's claim, *what court does*?  Merely because the government believes Mr. Jorgenson is not entitled to habeas relief on the claims he has asserted does not act to deprive this court of the power to hear and decide his claims.  The court rejects outright the government's citation to Rule 12(h)(3).

As to Rule 12(b)(6), that provision allows dismissal of a habeas petition if the petitioner has failed to state a claim upon which relief can be granted.  See FED. R. CIV. P. 12(b)(6).  Petitioners must plead "enough facts to state a claim to relief that is *plausible* on its face."  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a petitioner must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)).  A habeas petition does not need "detailed factual allegations" to survive a motion to dismiss, but a petitioner must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action.  Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  There is also a "plausibility standard" which "requires a [petition] with enough factual matter (taken as true)" to support the conclusion that the petitioner has a valid claim.  Id. at 556.  The petitioner's complaint must contain sufficiently specific factual

17

allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a petition.  Id. (citing Papasan, 478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a [petitioner] armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the petitioner's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the petitioner has alleged--but has not "show[n]"--that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the petition that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a petitioner's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then

may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.  These are the principles guiding the court's evaluation of respondents' motion.

Rule 12(b)(6) requires the court to evaluate the sufficiency of a petitioner's pleading of a claim by examining his or her petition.  See FED. R. CIV. P. 12(b)(6); Iqbal, 556 U.S. at 679.  Rule 56, the rule for summary judgment, allows the court to consider affidavits, documents, deposition transcripts and other items extraneous to the petition in determining whether to grant the motion.  See FED. R. CIV. P. 56.

Courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating the petition alone, however.  Dittmer Properties, L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).  They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." Id. (citing Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. 2004))).

When a respondent files a response to a § 2255 action, whether it be an answer or a motion to dismiss, the respondent is directed to attach any transcripts or other records the respondent considers to be relevant and which are not available in the court's records.  See Governing Rule 5(c).  In addition, Rule 4 specifically directs the court to examine the record of prior proceedings

19

in that court.  See Governing Rule 4(b).  In addition, the government has

supplied the court with an affidavit from Mr. Jorgenson's former counsel

addressing Mr. Jorgenson's allegations of ineffective assistance of counsel.  See

Docket No. 24.

In addition, the court considers the entire record in Mr. Jorgenson's

underlying criminal case.  Because these documents are required by Governing

Rule 5(c), and because these documents are of the type which the court would

be allowed to judicially notice, the court considers these documents in ruling

on respondents' Rule 12(b)(6) motion.  Dittmer Properties, L.P., 708 F.3d at

1021; FED. R. EVID. 201(b); Governing Rule 5(c).

## C.    Ineffective Assistance of Counsel

### 1.    The Standard for Ineffective Assistance Claims

The Sixth Amendment of the Constitution of the United States affords a

criminal defendant with the right to assistance of counsel.  U.S. Const. amend.

VI.  The Supreme Court "has recognized that 'the right to counsel is the right to

effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 698

(1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).

Strickland is the benchmark case for determining if counsel's assistance was

so defective as to violate a criminal defendant's Sixth Amendment rights and

require reversal of a conviction.  Id. at 687.  "When a convicted defendant

complains of the ineffectiveness of counsel's assistance, the defendant must

show that counsel's representation fell below an objective standard of

reasonableness."  Id. at 687-688.  The defendant must also show that counsel's

20

unreasonable errors or deficiencies prejudiced the defense and affected the

judgment. Id. at 691. The defendant must show, "there is a reasonable

probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt." Id. at 695. In sum, a defendant must satisfy the

following two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second, the
> defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. Unless a defendant makes both showings, it
> cannot be said that the conviction or death sentence resulted from
> a breakdown in the adversary process that renders the result
> unreliable.

Id.

"There is a presumption that any challenged action was sound trial

strategy and that counsel rendered adequate assistance and made all

significant decisions in the exercise of professional judgment." Hall v.

Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). It is the petitioner's burden to

overcome this presumption, and a "petitioner cannot build a showing of

prejudice on a series of errors, none of which would by itself meet the prejudice

test." Id. Counsel's conduct must be judged by the standards for legal

representation which existed at the time of the representation, not by

standards promulgated after the representation. Bobby v. Van Hook, 558 U.S.

4, 7-9 (2009). American Bar Association standards and similar directives to

lawyers are only guides as to what reasonableness of counsel's conduct is, they

are not its definitive definition. Id. The Supreme Court distinguishes between

21

those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009). In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence 'both that adduced at trial, and the evidence adduced in the habeas proceeding' " and "reweigh it against the evidence in aggravation." Id. at 40-41. It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

### 2.    Application of the Standard to Mr. Jorgenson's Claims

### a.    Pre-plea Allegations

Mr. Jorgenson asserts a number of pre-plea facts he believes show ineffective assistance of counsel. He argues counsel did not contact him at all between March 27/28, 2017, and his initial appearance in this court on June 19, 2017. This, however, is because from March to June 19, 2017, Mr. Jorgenson was in *state* custody on *state* charges of possession/use of a controlled substance and failing to register as a sex offender. There *were no federal charges* until May, 2017, and the court did not appoint Mr. Tupman to represent Mr. Jorgenson in this matter until June 19, 2017. Prior to June 19,

22

2017, there simply was no attorney-client relationship between Mr. Tupman and Mr. Jorgenson.  Therefore, Mr. Tupman could not possibly have been delinquent in failing to come see Mr. Jorgenson in jail or communicate with him prior to this date.

Mr. Jorgenson alleges that Mr. Tupman coerced him into signing the plea agreement by threatening him with receiving a life sentence if he went to trial. See Docket No. 12 at p. 4.  He also asserts Mr. Tupman told Mr. Jorgenson he had to plead guilty because Mr. Tupman had done nothing to investigate or prepare Mr. Jorgenson's case for trial.  Id.  Mr. Jorgenson further alleges Mr. Tupman never went over the terms of the plea agreement with him or told him what rights he would be waiving if he pleaded guilty.  Id. at p. 5.  He claims Mr. Tupman instructed him to say yes to all the court's questions at the change of plea hearing.  Id.

As Mr. Jorgenson acknowledges (see Docket No. 9 at pp. 6, 9), when a § 2255 petitioner has been convicted in his direct criminal proceedings by entering a guilty plea, the scope of issues available to him to be raised in habeas proceedings is curtailed.  As the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759 (1970)].

> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional [issue] he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry.  And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, . . . it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

The Supreme Court has explained why a guilty plea cuts off all constitutional claims that predate a plea.  Pleas are necessarily based on imperfect knowledge of the law and facts—one can only know what the result of a full-blown jury trial will be after the trial has been had, and even then, truth is still often in dispute.  McMann, 397 U.S. 769-70.  If a defendant admits his commission of a crime, upon good faith, reasonably competent advice from his counsel, the defendant assumes the risk that his attorney might be wrong about the facts or the outcome of a legal issue.  Id. at 774.

The issue presented in habeas proceedings is not whether—in retrospect--counsel was right or wrong about a certain fact or legal analysis, but rather, whether the defendant's plea was made voluntarily and intelligently and upon advice from his attorney that was "within the range of competence demanded of attorneys in criminal cases." Id. at 770-71.  Therefore, a defendant who pleaded guilty because of a prior coerced confession that he believed would be used against him at trial is not entitled to an evidentiary

hearing in a habeas proceeding without showing other, extenuating circumstances.  Id. at 771.

A voluntary and knowing plea is not transformed into a coerced plea simply because the defendant pleaded guilty to obtain a lesser sentence than the maximum possible penalty that would have been applicable if defendant had been convicted at trial.  Brady v. North Carolina, 397 U.S. 742, 751 (1970); Parker v. North Carolina, 397 U.S. 790, 795 (1970).  Guilty pleas are valid if the court record affirmatively discloses the plea was both voluntary and intelligent.  Boykin v. Alabama, 395 U.S. 238, 242 (1969).

A plea is voluntary if it is made by a defendant who is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," and so long as the plea was not induced by threats, misrepresentation, or by promises that are improper, unfulfilled, or unfulfillable.  Brady, 397 U.S. at 755.

A plea is intelligently made if the defendant was aware of the nature of the charge against him, and he was mentally competent and in control of his mental faculties.  Brady, 397 U.S. at 756.  A plea is not rendered unintelligently made simply because, long after the plea was entered, the defendant realizes his cost-benefit analysis as to whether to go to trial or to plead guilty did not correctly take into account every relevant factor which entered into his decision.  Id. at 756-57.

Here, the court has no difficulty concluding Mr. Jorgenson's plea was knowing and voluntary based on the record of the change of plea hearing.

25

Where a petitioner testified under oath at his plea hearing that he had reviewed the plea agreement with counsel, that he understood counsel, that he was part of a drug conspiracy that distributed a specified quantity of drugs, and that he was pleading guilty of his own free will without threats or coercion, the plea was not involuntary. Campos-Penaloza v. United States, 457 Fed. Appx. 596, 597 (8th Cir. 2-8-12) (unpub'd) (per curiam) (citing United States v. Gray, 152 F.3d 816, 820 (8th Cir. 1998); and Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997)). This conclusion was buttressed in Campos-Penaloza—and in Mr. Jorgenson's case--by the fact that petitioner never alleged that any new evidence came to light after his plea and he never requested to withdraw his plea. Campos-Penaloza, 457 Fed. Appx. at 598 (citing United States v. Washington, 198 F.3d 721, 724 (8th Cir. 1999)).

Mr. Jorgenson alleges Mr. Tupman told him to just sign the plea agreement and then "just say yes" to all the court's questions at the change of plea hearing and this renders his plea invalid. That same allegation was made in Adams v. United States, 869 F.3d 633, 635 (8th Cir. 2017). Adams claimed he did not understand the plea proceeding or the factual basis statement, that his attorney urged him to plead guilty blindly, that he signed the plea agreement only because his lawyer told him to, and that his lawyer instructed him to answer "yes" to every question from the court at the change of plea hearing. Id.

The Eighth Circuit approved of the district court's dismissal of these claims without holding an evidentiary hearing. Id. The court concluded Adams'

allegations could not be accepted as true because they contradicted the record, were inherently incredible, or were conclusions instead of factual assertions. Id.  In affirming the lower court, the Eighth Circuit noted that the transcript of the plea hearing, contrary to Adams' § 2255 assertions, showed he answered "no" to multiple questions.  Id.  The court stated a "defendant's representations during the plea-hearing carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings."  Id. (quoting Nguyen, 114 F.3d at 703).

The court concludes likewise here.  Mr. Jorgenson did not simply answer "yes" to all the court's questions.  There were multiple questions he answered "no" to.  See Docket No. 59 at p. 3, lines 5 & 8; p. 4, lines 12 & 15; p. 5, lines 2 & 5.  Furthermore, he never moved to withdraw his plea of guilty and he never disputed any of the allegations in the factual basis—*then or now.*

Where a habeas petitioner collaterally attacks his plea by arguing that counsel was ineffective in advising petitioner to plead guilty, the petitioner must show not only that his counsel's performance was deficient, he must also show that he was prejudiced by counsel's substandard advice.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (quoting Strickland v. Washington, 466 U.S. 668 (1984)).  In the context of a guilty plea, in order for a habeas petitioner to demonstrate prejudice under Strickland, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.

Where the allegation of ineffectiveness centers on a "failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the [petitioner] by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Id. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id. "[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' " Id. (quoting Strickland, 466 U.S. at 695).

Here, although Mr. Jorgenson filed many pleadings--an initial § 2255 motion, an amended motion, a memorandum of law in support of his motion, and a brief in opposition to the government's motion to dismiss (see Docket Nos. 1, 9, 12 & 32)--he never states in any of these pleadings that, absent counsel's allegedly ineffective assistance in recommending the plea, Mr. Jorgenson would have availed himself of his right to a jury trial. In fact, Mr. Jorgenson never asserts his innocence or disputes the factual basis statement.

Furthermore, the court finds that none of the allegations of ineffectiveness would have changed counsel's recommendation to plead guilty. Mr. Jorgenson never suggests that there was exculpatory evidence to be found which, had Mr. Tupman investigated thoroughly, would have provided a putative defense at trial. Or that there was some crucial witness with valuable

28

evidence that would have come to light with more investigation. The court finds Mr. Jorgenson's allegations that counsel failed to investigate and was not prepared for trial, even if assumed to be true, do not show prejudice. The evidence, as detailed in the PSR, was overwhelming.

Some of Mr. Jorgenson's allegations are simply not plausible on their face and the court so finds. For example, Mr. Jorgenson alleges that prior to the change of plea hearing, Mr. Tupman told Mr. Jorgenson he would object to the appeal waiver provision in the plea agreement and then he faults Mr. Tupman for failing to subsequently object. The court rejects this assertion outright.

Every plea agreement from the government in this district contains an appeal waiver. It is an unassailable, nonnegotiable part of every plea offer extended by the government. Mr. Tupman, who appears in this court daily, obviously knew this fact. He would never have told Mr. Jorgenson that he would object to the provision after having signed a document agreeing to the provision, especially because that provision would not have been removed by either the government or the court. Everyone in the criminal justice system in this district is aware that the appeal waiver is a mandatory requirement for all plea agreements. To get around it, a defendant must plead guilty without benefit of a plea agreement. Mr. Tupman would simply not have promised to perform such a fruitless act, knowing it would never be granted.

In addition to the implausibility of Mr. Jorgenson's allegation about Mr. Tupman, Mr. Jorgenson's own conduct belies the assertion. During the

change of plea hearing, the court discussed the plea waiver with Mr. Jorgenson thoroughly. If Mr. Jorgenson thought that counsel was supposed to object to that provision, Mr. Jorgenson would have said something during the colloquy with the court. The fact that he did not speaks volumes about what his understanding was at the time.

Mr. Jorgenson objects to the government's citation to the Strickland standard, insisting that his ineffective assistance claim is not based on Strickland, but rather is premised on United States v. Cronic, 466 U.S. 648 (1984). Cronic was decided approximately one month before the Court decided the Strickland case in the spring of 1984. The Cronic Court held that (in a phrase seized upon by Mr. Jorgenson), "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial" of the right to counsel guaranteed by the Sixth Amendment and no inquiry into prejudice need be conducted. Cronic, 466 U.S. at 659.

However, the Court went on to expressly limit this holding to cases "when surrounding circumstances justify a presumption of ineffectiveness." Id. at 662. The Court gave examples of such circumstances, such as when an out-of-state lawyer was appointed only days before a defendant's trial where the out-of-state lawyer indicated he was not familiar with local law at all and needed a continuance for trial, which the trial court denied. Id. at 660 (discussing facts of Powell v. Alabama, 287 U.S. 45 (1932)). The Court limited its no-prejudice holding to cases where "the surrounding circumstances made it so unlikely that *any* lawyer could provide effective assistance that

30

ineffectiveness was properly presumed without inquiry into actual performance" of the lawyer.  Id. at 661 (emphasis added).  Thus, the special circumstances present in Cronic deal with circumstances outside the lawyer—circumstances which make it possible for the court to presume that *no lawyer* could be constitutionally effective under the circumstances.

No such circumstances are present in Mr. Jorgenson's case.  He was appointed one of the most experienced lawyers who represent criminal defendants in federal court in the District of South Dakota.  The lawyer was appointed nearly one year before the change of plea hearing took place.  Numerous continuances were requested by the lawyer (at Mr. Jorgenson's request) and all but the last continuance was granted.  There is simply no showing of the kind of extraordinary circumstances in this case that the Cronic Court outlined that would lead the court to believe *no lawyer* could have been effective representing Mr. Jorgenson.

In the absence of such extraordinary circumstances, then, the usual rule announced in Strickland applies:  Mr. Jorgenson must show both deficient performance and prejudice.  The court concludes he has shown neither in regard to his pre-plea allegations.  The court therefore recommends the government's motion to dismiss the pre-plea allegations be granted.

### b.  Post-plea and Sentencing Allegations

Mr. Jorgenson alleges Mr. Tupman was deficient at sentencing, again, for failing to object to the appeal waiver.  For reasons discussed above, the court rejects that allegation as implausible.  Furthermore, because it stood no

31

chance at all of having been granted, there was no prejudice to Mr. Jorgenson because the objection was not made.

Mr. Jorgenson also asserts counsel was ineffective for failing to object to the consideration of the other dismissed charges at his sentencing. Mr. Jorgenson's sentence was enhanced by application of specific offense characteristics detailed above which added points to his USSG offense level.

Mr. Tupman explained in his affidavit he never promised Mr. Jorgenson that he would object to consideration of the other relevant conduct revealed by the investigation. See Docket No. 24 at p. 5. Mr. Tupman explained that, in his estimation, the facts of the investigation clearly fell under the concept of other relevant conduct as specifically set forth in USSG § 1B1.3(a)(2). Id. Therefore, any objection to the court's consideration of this other conduct would have been denied as frivolous. Id.

There are two reasons this allegation fails under Strickland. First of all, it was counsel's sentencing strategy, which is virtually unassailable on collateral attack. Hall, 296 F.3d at 692. Second, counsel's reading of USSG § 1B1.3(a)(2) was clearly correct. As such, Mr. Jorgenson cannot demonstrate prejudice as a result of the objection not having been made.

Section 1B1.3 provides that the court shall determine a defendant's base offense level *and* any specific offense characteristics on the basis of, among other things, ***all acts*** committed by the defendant and ***all harm*** that resulted from the acts considered. See USSG § 1B1.3(a)(1)(A) and (a)(3). The application notes for this section state "[c]onduct that is not formally charged

or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." Id. comment, (backg'd).  The Eighth Circuit has held it "is well-established that conduct related to a dismissed count may be relevant conduct for purposes of USSG § 1B1.3."  United States v. White, 447 F.3d 1029, 1032 (8th Cir. 2006).  Had counsel objected to consideration of Mr. Jorgenson's acts in connection with dismissed counts, that objection would surely have been overruled.  Therefore, Mr. Jorgenson fails to demonstrate deficient performance (i.e. failure to make a losing argument is not deficient performance) and fails to demonstrate prejudice.

Mr. Jorgenson alleges counsel refused or failed to contact his family to obtain testimony or letters in his support for sentencing.  This allegation is belied by the record.  Both Mr. Jorgenson's mother and aunt wrote letters of support to be considered at sentencing.  They attended the sentencing hearing, as did other friends and family of Mr. Jorgenson's, but when the district court invited them to come forward and give testimony, no one accepted that invitation.  This allegation does not support Mr. Jorgenson's ineffective assistance claim.

Mr. Jorgenson also faults counsel for failing to tell the sentencing court about the programming and counseling he had been receiving.  Counsel states under oath Mr. Jorgenson never made him aware of any programming or counseling and never asked him to speak about it at sentencing.  Mr. Jorgenson himself addressed the court directly at sentencing.  He

submitted a written allocution statement for the court to read and he also addressed the court orally.  In neither of these statements did Mr. Jorgenson mention any programming or counseling he had received.  The court finds Mr. Jorgenson failed to demonstrate he *had* engaged in any such activity—no records or certificates were submitted to this court to prove the existence of such classes.  Even if he had, Mr. Jorgenson himself had free rein to tell the sentencing court about these activities and he did not do so.  This is evidence that, if the activities took place, Mr. Jorgenson did not feel they were important sentencing considerations.

Mr. Jorgenson may not rely on pre-plea acts or omissions of counsel to demonstrate a claim under <u>Strickland</u>.  His plea was knowing and voluntary.  The allegations he makes regarding allegedly ineffective assistance post-plea and at sentencing are either unsubstantiated or he cannot demonstrate prejudice.  The court recommends that the government's motion to dismiss the pre-sentencing allegations of ineffective assistance of counsel be granted.

### c.    Appeal

Mr. Jorgenson alleges he telephoned his counsel multiple times following his sentencing hearing in an attempt to ask him to appeal.  Mr. Jorgenson states he was never able to talk to counsel.  No appeal was filed.

"[A]n attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary."  <u>Carnnahan v. United States</u>, 778 Fed. Appx. 404, 405 (8th Cir.

2019) (*per curiam*) (quoting <u>Barger v. United States</u>, 204 F.3d 1180, 1182 (8th Cir. 2000).  "This remains true 'even if the client waived h[is] right to appeal as part of a plea agreement.' " <u>Id.</u> (cleaned up) (quoting <u>United States v. Sellner</u>, 773 F.3d 927, 930 (8th Cir. 2014); <u>see also</u> <u>Garza v. Idaho</u>, 139 S. Ct. 738, 744-45 (2019)).  "In general 'where a petitioner's allegations, if true, amount to ineffective assistance of counsel, a hearing must be held unless the record affirmatively refutes the factual assertions upon which the claim is based.' " (cleaned up) (quoting <u>Watson v. United States</u>, 493 F.3d 960, 964 (8th Cir. 2007)).  "Indeed, 'if neither party's statement is facially incredible and both contain similar specificity regarding when the alleged appeal-request conversations took place (or did not take place), counsel's contrary statement is is insufficient to support a finding that the petitioner's allegations canot be accepted as true.' " <u>Id.</u> at 405-06 (cleaned up) (quoting <u>Witthar v. United States</u>, 793 F.3d 920, 923 (8th Cir. 2015)).

Failure to pursue an appeal that has been requested by a client is deficient attorney performance *per se.* <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000).  In such a case, "prejudice is presumed because the defendant has forfeited his right to an appellate proceeding as a result of his counsel's error." <u>Id.</u> at 483-84.  A defendant has "the ultimate authority" to determine "whether . . . to take an appeal." <u>Florida v. Nixon</u>, 543 U.S. 175, 187 (2004).  As a matter of law, the right to appeal is one that can be waived only by the defendant himself, not by counsel. <u>Id.</u>

It is axiomatic that the petitioner must show that he asked his trial

counsel to file an appeal. <u>Barger</u>, 204 F.3d at 1182 (citing <u>Holloway v. United States</u>, 960 F.2d 1348, 1357 (8th Cir. 1992)). But that does not mean that a bare assertion is enough to merit an evidentiary hearing. <u>Green v. United States</u>, 323 F.3d 1100, 1103 (8th Cir. 2003). Where the written record is conclusive, the court can rule on the claim without holding an evidentiary hearing. <u>United States v. Robinson</u>, 171 Fed. App'x 536, 537 (D. Minn. 2006) (hearing should be held where the record is inconclusive).

There have been cases where the Eighth Circuit has held no evidentiary hearing is necessary. For example, where a § 2255 petitioner claimed he told his counsel to appeal, but counsel submitted an affidavit specifically denying this, and counsel's affidavit was supported by a contemporaneous letter counsel sent to petitioner at the time an appeal would have been pursued, the Eighth Circuit held it was not error to dismiss the petitioner's claim without an evidentiary hearing. <u>Rodriguez v. United States</u>, 964 F.2d 840, 841-42 (8th Cir. 1992). A similar conclusion was reached by the Northern District of Iowa in <u>Sanguino v. United States</u>, 2009 WL 2922038 *6 (N.D. Iowa Sept. 8, 2009), where the petitioner's claim was supported by nothing more than a bare assertion.

The court believes the record in this case presents a claim requiring an evidentiary hearing to resolve. Mr. Jorgenson did not simply make a bare assertion that he requested an appeal. Instead, Mr. Jorgenson states that he telephoned counsel's office on August 4, 7, 8, 16, and 22, 2018, requesting to talk to counsel about appealing. Mr. Jorgenson states the secretary who

36

answered the phone told him on each of the above occasions that counsel was unavailable.  Mr. Jorgenson further asserts that the secretary told him she had relayed Mr. Jorgenson's request to appeal to counsel and that counsel would follow through.  The detail contained in Mr. Jorgenson's narrative takes it out of the category of a "bare assertion."

Counsel's affidavit is equally detailed and persuasive.  Counsel states that his office has an established procedure for documenting telephone calls from clients.  See Docket No. 24 at p. 2, ¶4.  Staff who receive such phone calls enter the message from the client into the office's case management system, where the information is retained.  Id.  Contemporaneously with such information being entered into the case management system, counsel receives an email alert with the information.  Id.  Counsel asserts in his affidavit that at no time during counsel's representation did Mr. Jorgenson ever contact counsel or his staff via telephone.  Id.

Counsel's affidavit goes on to state that on August 3, 2018, the day after sentencing, counsel sent Mr. Jorgenson a letter enclosing his judgment of conviction.  Id. at p. 6, ¶27.  That letter indicated counsel assumed Mr. Jorgenson did not want to appeal, but nevertheless advised him of the 14-day appeal deadline.  Id.  Counsel indicates his office heard nothing from Mr. Jorgenson until August 20, 2018, when counsel received a letter from Mr. Jorgenson asking counsel to appeal.  Id. at ¶28.  By this date, it was too late to appeal (the appeal period ended August 16), so counsel did not file an appeal.  Id.

Finally, counsel states that on the same date he received Mr. Jorgenson's belated request to appeal, counsel visited Mr. Jorgenson in person and explained (1) it was too late now to appeal, and (2) the government would almost certainly move to dismiss any appeal filed based on the appeal waiver in the plea agreement.  Id.  Mr. Jorgenson stated he understood and agreed that counsel should not file an appeal.  Id.

Counsel's affidavit is rich in detail, but it cannot be said that Mr. Jorgenson's claim is a "bare assertion" that he asked for an appeal.  The court concludes that, barring any additional evidence, an evidentiary hearing will be required to determine credibility.  The court notes that, during the time Mr. Jorgenson alleges he made these phone calls, he would have been an inmate at a jail or prison facility.  Such facilities almost always have records of calls made by inmates in the facility.  In addition, detention facilities usually require logs of all visitors to detainees.  If detention facility records showed counsel visited Mr. Jorgenson on August 20 in person to explain it was too late to appeal, this would cast substantial doubt on Mr. Jorgenson's claim he later telephoned counsel on August 22 to request that counsel file an appeal. Should evidence be presented that the facility(ies) in which Mr. Jorgenson resided during August 2-16, 2018, show he made no phone calls to counsel's office during those dates and/or that counsel visited Mr. Jorgenson on August 20, the court's conclusion could be different.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss be granted in part and denied in part.  The court recommends dismissing all but Mr. Jorgenson's claim that he asked counsel to appeal and counsel failed to pursue an appeal on his behalf.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED January 28, 2020.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge